UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL R. HOLMES     CIVIL ACTION

VERSUS     No. 19-12749

CORBETT REDDOCH, ET AL.     SECTION I

## ORDER & REASONS

Before the Court is a motion *in limine*[1] filed by plaintiff Michael R. Holmes ("Holmes") to exclude the testimony of the defendants' police policy and procedure expert, Kerry Najolia ("Najolia"). Defendants Corbett Reddoch ("Reddoch"), Ryan Hebert, Holly Hardin ("Hardin"), Chris Lambert, Paul Durnin, and Gerald A. Turlich, Jr., in his official capacity as Sheriff of Plaquemines Parish (collectively, "defendants"), oppose[2] the motion. For the reasons below, the Court denies Holmes' motion and it defers some issues until trial.

### I. FACTUAL BACKGROUND

The Court previously set forth the relevant facts underlying the above-captioned action in its order granting summary judgment in favor of the defendants and its order granting reconsideration of Holmes' motion to lift a previous stay of this action.[3] It therefore assumes familiarity with the background of this litigation.

---

[1] R. Doc. Nos. 147 (motion *in limine*) and 151 (reply memorandum in support of motion *in limine*).
[2] R. Doc. No. 148.
[3] R. Doc. Nos. 97 and 127.

In his motion *in limine*, Holmes asserts that Najolia's testimony is properly excluded on the grounds that Najolia's opinions "offer[] no more than conclusory opinions in the face of disputed facts" and are therefore "of little assistance to the jury in understanding the evidence or in reaching its own resolution of the factual questions at issue."[4] Holmes also asserts that Najolia's testimony is excludable, as it is not helpful to the jury and its probative value is substantially outweighed by the danger of prejudice, confusion, and misleading of the jury.[5]

## II. STANDARDS OF LAW

### a. Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239,

---

[4] R. Doc. No. 147-1, at 6.
[5] *Id.* at 7.

243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.

The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also

3

in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note). An expert witness may not make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014). However, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704; *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

      **b.**      **Federal Rule of Evidence 403**

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[T]o warrant exclusion, the danger of unfair prejudice—on this ground or any other—must *substantially* outweigh the probative value of the evidence. Accordingly, [the Fifth Circuit has] recognized that Rule 403's scope is narrow." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (emphasis in original). The purpose of Federal Rule of Evidence 403 is to "prevent evidence from inducing decision on a purely emotional basis" and to "exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.* at 354 (internal citations omitted).

### III. ANALYSIS

#### a. Federal Rule of Evidence 702

Holmes' first argues that Najolia's testimony is properly excluded on the basis that it improperly weighs evidence and makes credibility determinations, invading the province of the jury and failing to satisfy Rule 702(a)'s requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue[.]"[6] Holmes highlights the wording of Najolia's expert report, in particular the "Case Facts"[7] section, which he believes gives unfair credence to Reddoch's version of events, as well as the fact that Najolia's report states that Kirsch Wilberg ("Wilberg"),

---

[6] R. Doc. No. 147-1, at 2.
[7] R. Doc. No. 147-2, at 4–8.

5

then-principal of the school, informed Reddoch that several students reported a man taking pictures of them, while Wilberg's deposition testimony instead states that she informed Hardin.[8] Thus, Holmes concludes, "Najolia chooses to believe Reddoch and ignore Wilberg"[9] and, in doing so, improperly weighs the evidence and makes a credibility determination.

Holmes cites several cases from the Eastern District of Louisiana and the Middle District of Louisiana in which courts excluded Najolia's testimony on the ground that "Najolia's opinions regarding whether the [the conduct of the defendants] was reasonable, appropriate, justified, or excessive go [] beyond 'embracing' ultimate issues of law and fact and instead offer 'ultimate legal conclusions,' for which '[t]he judge is the source of law and the only expert needed by a jury.'" *Joseph v. Doe*, No. 17-5051, 2021 WL 2313475, at *3 (E.D. La. June 7, 2021) (Morgan, J.) (quoting *Manton v. Strain*, No. 09-339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (Vance, J.)).[10]

---

[8] R. Doc. No. 147-1, at 3 (citing R. Doc. No. 76-2, at 21:9).
[9] *Id.*
[10] The Court notes that several of the cases cited by the plaintiff in support of its argument that Najolia's testimony should be excluded offer little explanation of why the court in that case excluded Najolia's testimony, and therefore do little to bolster Holmes' argument. For instance, the order in *Harris v. City of Baton Rouge*, No. 03-640, 2005 WL 6009992 (M.D. La. Apr. 8, 2005), is three lines long and states little more than "[Najolia] will not be allowed to testify concerning the first two items listed on page 2 of the expert's report or to express his opinion concerning the reasonableness of the actions of the police officer in making this arrest." *Id.* at *1. Similarly, the only mention of Najolia and his proposed testimony in *Chauvin v. Lee*, No. 99-2200, 2000 WL 1537988 (E.D. La. Oct. 16, 2000) (Berrigan, J.), are two sentences stating that the plaintiffs' motion *in limine* to exclude Najolia's report and testimony was granted as unopposed and noting that counsel for the defendants advised the court that they did not oppose the motion. *See id.* at *1. Holmes also relies

6

Defendants, in their opposition, argue first that the cure for Holmes' concerns is not to exclude Najolia's testimony, but for Holmes to employ cross-examination to clarify the underlying facts or data upon which Najolia's opinions are based and utilize hypotheticals to elucidate how his opinions might change given a different set of facts.[11] Second, defendants assert that Najolia's testimony is not offered for the purpose of proving the defendants' "actions were *reasonable*," but rather "to provide the jury with guidelines of customary and proper procedure by which to judge the Defendants' actions for *reasonableness*."[12]

In contrast to Holmes' interpretation of the "*Case Facts*"[13] portion of Najolia's report, the Court "reads Najolia's expert report as reciting the predicate facts upon which he relied when forming his conclusions, rather than recommending how the

---

on three cases from the Middle District of Louisiana, decided by the same U.S. Magistrate Judge: *Gage v. Jenkins*, No. 13-0638, 2017 WL 2190064 (M.D. La. May 18, 2017) (Wilder-Doomes, M.J.); *Haynes v. Parker*, No. 13-0818, 2017 WL 1027028 (M.D. La. Mar. 16, 2017) (Wilder-Doomes, M.J.); and *Day v. Baton Rouge City Police*, No. 17-328, 2020 WL 7024478 (M.D. La. Nov. 30, 2020) (Wilder-Doomes, M.J.). To the extent these cases exclude Najolia's legal conclusions, they are consistent with this opinion.

[11] R. Doc. No. 148, at 6–8.

[12] *Id.* at 8 (emphasis in original). The defendants assert that Najolia's testimony
> will not supplant the jury in determining the facts, but will assist the jury in understanding how [Plaquemines Parish Sherriff's Office ('PPSO')] Deputies are trained, and the policies and procedures in which they are trained, particularly in the use of force[,] . . . what PPSO Deputies can and cannot do in certain circumstances with which they are faced, and will offer testimony and evidence relative to the use of force continuum, how it operates (for instance when and how it escalates and deescalates) and how less-than-lethal compliance systems and techniques are incorporated into the use of force continuum.

*Id.* at 13–14.

[13] R. Doc. No. 147-2, at 4–8.

trier of fact should resolve any disputed facts." *Whitfield v. Riley*, No. 09-8074, 2021 WL 3419463, at *3 (E.D. La. Apr. 21, 2021) (Ashe, J.). And, as noted by the defendants, the cure for disputes regarding the facts underlying an expert opinion "is not to exclude the expert testimony, but to present the contradicting facts in cross-examination" and to "question Najolia on how his expert opinion might change based upon an alternative set of facts." *Id.* (citing JOSEPH W. COTCHETT & G. RICHARD POEHNER, FEDERAL COURTROOM EVIDENCE § 702, at 19-9 (5th ed. 2020). As the Advisory Committee in the notes to the 2000 amendment of Rule 702 explained, "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts" and therefore "[t]he emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702, Advisory Committee Notes. Counsel for both parties may utilize hypotheticals to elucidate the bases and contours of Najolia's opinions, as Rule 702's "language [of] 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."[14] *Id.* Needless to say, Najolia may not offer credibility determinations regarding the facts, and any questions directed to him at trial must be properly phrased as to form and content.

---

[14] *See* Fed. R. Evid. 702(b) (an expert "may testify in the form of an opinion if . . . the testimony is based on sufficient facts or data"); *id.* 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").

Holmes may utilize cross-examination "to test the correctness of whatever facts [Najolia] assumes as the basis for his opinions." *Joseph*, 2021 WL 2313475, at *6. "Indeed, 'the Federal Rules of Evidence deliberately shift the burden to the cross-examiner to ferret out whatever empirical deficiencies may lurk in the expert opinion.'" *Id.* (quoting *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993)).

The facts or data provided by expert witnesses must also comply with Federal Rule of Evidence 703.[15] As stated by Judge Morgan,

> [s]o long as [d]efendants introduce sufficient evidence at trial to support their version of the facts (and these facts are the version of the facts assumed by Najolia), the [d]efendants may ask Najolia to testify as to the resistance offered by [the d]ecedent during the arrest assuming those facts are true. Najolia may not simply regurgitate (or anticipate) factual testimony about the events at issue. Instead, once the facts necessary for him to render an opinion are in evidence, he may assume those facts as a hypothetical and give opinion testimony based on the assumption of those facts.

*Joseph*, 2021 WL 2313475, at *5.

With regards to the "*Opinions*"[16] section of Najolia's expert report, the Court finds, as examples, the following statements to be legal conclusions which do not aid the jury, but advise it how to vote:

---

[15] "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.
[16] R. Doc. No. 147-2, at 9–13.

1. "Sergeant Reddoch had developed reasonable suspicion to conduct a stop and had probable cause to arrest or detain [Holmes]."[17]
2. "In my opinion, it was appropriate to stop, detain[, and] arrest Mr. Holmes."[18]

*See Joseph*, 2021 WL 2313475, at *3 ("Najolia's opinions regarding whether the force used in the arrest of [decedent] was reasonable, appropriate, justified, or excessive go extend beyond 'embracing' ultimate issues of law and fact and instead offer 'ultimate legal conclusions[.]'"); *see also* MICHAEL R. FONTHAM, TRIAL TECHNIQUE AND EVIDENCE § 8-6, at 391 (1995) ("[A]lthough the expert's opinion may 'embrace' the ultimate issue, the expert should not apply the law to the facts, effectively advising the jury how to vote.").

"Najolia will not be permitted to exceed the bounds of expert testimony by questioning the credibility of witnesses, portraying facts as conclusively determined, applying the law to the facts, or making broad statements of legal conclusions." *Whitfield*, 2021 WL 3419463, at *4. However, to the extent Najolia's testimony is offered, as the defendants assert, merely to provide the jury with information on law enforcement policies, procedures, and training, his testimony may be helpful to the jury and it does not supplant the jury as finder of fact and the judge as the source of the law. Fed. R. Evid. 702; *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985).

Accordingly, as it is not possible to predict at this time what questions counsel will put to Najolia during his testimony and, therefore, to predict the content and

---

[17] *Id.* at 11.
[18] *Id.* at 13.

form of his testimony, other than as stated herein, the Court finds it prudent to defer any determination as to the admissibility of any specific portions of Najolia's testimony until trial.

### b. Federal Rule of Evidence 403

Holmes also argues that Najolia's testimony should be excluded pursuant to Rule 403 on the ground that it "has no probative value, much less any probative value that is not outweighed by prejudice, confusion, and misleading of the jury."[19] Holmes asserts that "the testimony of an 'expert' who chooses to believe some testimony and reject or ignore other testimony will not help the jury but only confuse and mislead it[,]"[20] and even if Najolia's testimony is limited to discussing police training and proper police procedure, such testimony is irrelevant because Holmes has "abandoned" his claims for negligent hiring, negligent training, negligent retention, negligent supervision, and failure to educate and discipline.[21]

The Court is not persuaded that testimony as to training and best practices in law enforcement is irrelevant and unhelpful in a case where the reasonableness of law enforcement officers' conduct is central, or that the probative value of such testimony is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

---

[19] R. Doc. No. 147-1, at 7; *see also* R. Doc. No. 151, at 5–8.
[20] R. Doc. No. 147-1, at 3.
[21] R. Doc. No. 151, at 2 (citing R. Doc. No. 139). Holmes' remaining claims are for assault, battery, false imprisonment/false arrest, intentional infliction of emotional distress, unreasonable/unlawful search of Holmes' person and property, destruction of property, malicious prosecution, and vicarious liability. R. Doc. No. 139.

11

cumulative evidence." Rule 403. The Court finds that the jury would benefit from understanding general police policies and procedures, including best practices, so that the jury can better determine whether the defendants' actions were inside or outside of the boundaries of reasonable conduct. *See Brown v. Bryan Cnty., OK*, 219 F.3d 450, 462, 464 (5th Cir. 2000) (discussing the utility of expert testimony as to police training and standards of conduct).

Notably, even in the cases cited by Holmes in which the court excluded Najolia's testimony as to the *reasonableness* of the defendants' actions, Najolia was nonetheless permitted to testify as to *general topics* pertaining to law enforcement training, procedures, and the use of force. For instance, in *Joseph*, another section of this Court excluded "Najolia's opinions regarding whether the force used in the arrest of [decedent] was reasonable, appropriate, justified, or excessive," yet it also held that "[a] use of force expert may offer testimony regarding police policies and procedures as well as whether or not specific acts by a defendant comported with those policies or procedures." It therefore permitted Najolia to "opine on the standards or practices applicable to the incident involving [a decedent plaintiff], and whether or not certain standards or practices were met or violated by the conduct of the [] police officers during the incident." 2021 WL 2313475, at *3–4. In other words, the *Joseph* court found Najolia's testimony as to general police policies and procedures to be helpful to the jury as it did not present a substantial risk of misleading or confusing the jury.

Defendants are reminded that an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make

12

factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P.*, 574 F. App'x at 491. The Court finds that the probative value of Najolia's testimony as to general law enforcement training, policies and procedures, best practices, and the use of force is not substantially outweighed by the danger of "unfair prejudice, confusing the issues, [or] misleading the jury[.]" Rule 403.

The Court emphasizes that prior to trial, the Court cannot predict the relevance of any particular question or the form of any question. Counsel may reurge any objection it has to any specific question at trial.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Holmes' motion *in limine* is **DENIED WITHOUT PREJUDICE** to his right to renew any evidentiary objections at trial, and the Court **DEFERS** some issues until trial.

New Orleans, Louisiana, March 31, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**