UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL R. HOLMES                                        CIVIL ACTION

VERSUS                                                   No. 19-12749

CORBETT REDDOCH, ET AL.                                  SECTION I

ORDER AND REASONS

Before this Court is plaintiff Michael R. Holmes's ("Holmes") motion[1] for attorney's fees and expenses. Defendants Deputy Corbett Reddoch ("Reddoch") and Sheriff Gerald A. Turlich ("Turlich") (collectively, "defendants") filed a response[2] in opposition. Holmes filed a reply.[3] As detailed herein, and for the reasons that follow, the Court grants Holmes's motion in part and denies it in part.

I.   FACTUAL BACKGROUND

This case arises out of an incident in which Holmes was stopped and arrested at a church-school fair. Holmes, proceeding *pro se*, originally initiated this suit on September 23, 2019, asserting multiple state and federal claims against six defendants: Reddoch, Turlich, Ryan Hebert, Holly Hardin, Chris Lambert, and Paul Durnin.[4] Holmes proceeded in this lawsuit *pro se* for nearly a year before Harrece Gassery ("Gassery") enrolled as counsel for Holmes on September 21, 2020[5] and

---

[1] R. Doc. No. 250.
[2] R. Doc. No. 254.
[3] R. Doc. No. 255.
[4] R. Doc. No. 1, ¶¶ 5–10, 47–50.
[5] R. Doc. No. 50.

1

Kearney Loughlin ("Loughlin") enrolled as additional counsel on September 25, 2020.[6]

On September 22, 2020, Holmes submitted a memorandum delineating his claims, which included multiple claims pursuant to 42 U.S.C. § 1983 for violations of his rights as guaranteed by the U.S. Constitution.[7] These included claims for violations of the Fourth Amendment for unreasonable detention, unlawful arrest, false imprisonment, excessive force, and an unreasonable search.[8] Holmes likewise alleged violations of his right to privacy, to be free from malicious prosecution, to due process, and to free speech and expression pursuant to the First, Fifth, and Fourteenth Amendments.[9] Additionally, Holmes made several state-law claims such as claims for assault, battery, false arrest, malicious prosecution, trespass to chattel, conversion, and negligent hiring.[10] Holmes's memorandum maintained claims against all six of the defendants listed in Holmes's original complaint.[11]

The defendants filed a motion for summary judgment.[12] The Court granted the motion, dismissing the federal claims based on its finding that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Holmes's Fourth Amendment claims for false arrest, false imprisonment, malicious prosecution, and excessive force.[13] The Court found that the

---

[6] R. Doc. No. 55.
[7] R. Doc. No. 52.
[8] *Id.* at 3–6.
[9] *Id.* at 6–9.
[10] *Id.* at 9–13.
[11] *Id.* at 1.
[12] R. Doc. No. 68.
[13] R. Doc. No. 97, at 18–24.

remainder of Holmes's claims were either improperly pleaded or barred by qualified immunity.[14] And the Court dismissed Holmes's state-law claims without prejudice to their being raised in state court.[15]

Holmes filed an appeal,[16] which was successful when the Fifth Circuit vacated the Court's judgment and remanded for further proceedings.[17] The Court concluded that the Fifth Circuit's decision vacated the Court's judgment only as it pertained to the claims that the Court had determined were barred by *Heck*, and it did not disturb the Court's holding with respect to the claims barred by qualified immunity.[18]

Shortly before trial, Holmes voluntarily dismissed all claims against Holly Hardin, Christopher Lambert, and Paul Durnin.[19] And during the trial, the Court granted the defendants' motion for judgment as a matter of law with respect to Holmes's federal malicious prosecution claim, concluding that the claim was barred by qualified immunity.[20]

On May 17, 2023, after a three-day trial, the jury found that Reddoch had (1) unreasonably arrested Holmes in violation of the Fourth Amendment, (2) committed the Louisiana state-law tort of battery upon Holmes, (3) committed the Louisiana state-law tort of false arrest or imprisonment against Holmes, and (4) committed the

---

[14] *Id.* at 26–38, 40.
[15] *Id.* at 40.
[16] R. Doc. No. 99.
[17] R. Doc. No. 109.
[18] R. Doc. No. 204.
[19] R. Doc. No. 164.
[20] R. Doc. No. 217, at 2.

3

Louisiana state-law tort of malicious prosecution against Holmes.[21] The jury awarded Holmes compensatory damages of $4,200.00 for past medical expenses; $50,000.00 for past and future pain and suffering, mental anguish, loss of enjoyment of life, and disability; and $3,500.00 for expenses and costs arising from his legal defense in the state criminal action filed against him for resisting arrest.[22] The jury also awarded Holmes $65,000.00 in punitive damages for Reddoch's violation of Holmes's Fourth Amendment right to be free from unreasonable arrest.[23]

But the jury rejected several of Holmes's federal claims. Against Reddoch, the jury found that Holmes was unreasonably stopped but that Reddoch was entitled to qualified immunity for that stop.[24] And the jury rejected Holmes's federal claims against Reddoch for use of excessive force in violation of the Fourth Amendment and retaliation for protected speech in violation of the First Amendment.[25] The jury rejected all claims against Ryan Hebert.[26]

The Court then entered judgment against Reddoch and Turlich, including $57,700.00 as compensatory damages for Reddoch's violations of federal and Louisiana law and $65,000.00 in punitive damages for Reddoch's violation of federal law, for a total of $122,700.00 in damages.[27] However, the Court deferred the issue of

---

[21] R. Doc. No. 219.
[22] *Id.* at 11.
[23] *Id.* at 13.
[24] *Id.* at 2.
[25] *Id.* at 3–4.
[26] *Id.* at 7–8.
[27] R. Doc. No. 230.

4

attorney's fees and costs until a final judgment was issued in the case.[28] Defendants then filed a second appeal.[29] On September 30, 2024, the Fifth Circuit entered final judgment affirming the judgment of this Court.[30]

Holmes now seeks attorney's fees totaling $304,647.12 and litigation-related expenses totaling $2,512.40 as a prevailing party pursuant to 42 U.S.C. § 1988(b).[31] Attorneys for Holmes support this request with detailed billing and expense records throughout the more than four years in which they were involved in the case.[32]

Defendants argue that the Court should reduce the attorney's fees to "reflect the lack of damages received at trial and the dismissal of certain claims before trial" and that the fees should "be reduced to the extent they are excessive and duplicative."[33] Defendants do not argue that the hourly fees charged by Holmes's attorneys are unreasonable and do not point to any specific hours in the billing records that should be discounted. Instead, defendants merely state that the duplicative, excessive, and unnecessary fees in this case "are too many to mention," that "[t]here was no reason to have multiple attorneys participating" in many steps of litigation, and that "Gassery did not participate meaningfully in trial or in the litigation in general." [34] Defendants do not make any argument regarding Holmes's request for expenses.

---

[28] *Id.* at 2.
[29] R. Doc. No. 231.
[30] R. Doc. No. 249.
[31] R. Doc. No. 250, at 1.
[32] *See* R. Doc. Nos. 250-2, 250-3.
[33] R. Doc. No. 254, at 1.
[34] *Id.* at 10.

## II. STANDARD OF LAW

Title 42 U.S.C. § 1988(b) provides that in any action to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." While the plain language of § 1988 grants courts discretion to determine whether to award a prevailing party attorney's fees, case law has established that, "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course." *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (internal quotation marks and citation omitted). Additionally, it is well settled that, "under 42 U.S.C. § 1988, a prevailing party may also recover '[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone . . . because they are part of the costs normally charged to a fee-paying client.'" *DeLeon v. Abbott*, 687 F. App'x 340, 342 (5th Cir. 2017) (quoting *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)).

The Fifth Circuit has held that "where a plaintiff prevails on both a § 1983 claim and a [non-fee-supporting] claim that are based on a 'common nucleus of operative facts,' the plaintiff may recover attorney's fees for both claims." *Planned Parenthood of Hous. and S.E. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007). Additionally, where a plaintiff prevails against some parties but not others, "a fee applicant may claim all hours reasonably necessary" if "claims against multiple parties share a 'common core of facts' or 'related legal theories.'" *La. Power & Light*

*Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) (per curiam) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)).

To calculate a reasonable attorney's fee award, courts begin with the lodestar, which is determined by taking the "reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers . . . [and] multiply[ing] the reasonable hours by the reasonable hourly rates." *La. Power & Light Co.*, 50 F.3d at 324 (citations omitted); *see, e.g.*, *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994) ("The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.").

"When moving for attorney's fees, 'the fee applicant bears the burden of establishing entitlement to an award . . . .'" *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437). What constitutes a reasonable hourly rate is "computed according to the prevailing market rates in the relevant legal market." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted). If the nonmoving party does not oppose the hourly rate, that rate is "*prima facie* reasonable." *Islamic Ctr. of Miss. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

Prevailing parties seeking attorneys' fees are also "charged with the burden of showing the reasonableness of the hours billed and . . . proving that they exercised

7

billing judgment." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "The party seeking attorneys' fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dept. of Hous. and Urb. Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

There is a strong presumption that the lodestar amount is reasonable. *Saizan*, 448 F.3d at 800. However, once the lodestar is calculated, the court may adjust it upward or downward based upon the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* These factors are:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan*, 448 F.3d at 800. *Id.* at 800 n.18. An adjustment based on the *Johnson* factors is appropriate where the lodestar "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010).

8

However, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800. For example, "[t]he first factor already is included in the lodestar." *Walker*, 99 F.3d at 771. "'[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984)). The Fifth Circuit has also stated that "the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees" and that the preclusion of other employment, "will ordinarily be subsumed within the lodestar amount" because it will be reflected in the number of hours billed. *Shipes v. Trinity Indus.*, 987 F.2d 311, 321–23 (5th Cir. 1993).

However, of the *Johnson* factors that courts may consider in adjusting the lodestar, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

### III. ANALYSIS

Holmes has two attorneys in this case now requesting attorneys' fees. Each submitted a log of their billing records. Gassery's hourly rate over the course of litigation ranges from $215 to $265.[35] Many of Gassery's hours were billed at a discount from his ordinary rate.[36] His log reflects 387.88 hours of work, costing $91,431.70 in hourly fees.[37] Loughlin billed his usual hourly rate in this matter, which was $375 in 2020, $400 in 2021 and 2022, $425 in 2023, and $450 in 2024.[38] His log reflects a total of 505.7 hours, amounting to $210,402.50 in hourly fees.[39] Defendants do not challenge the hourly rates charged by Gassery or Loughlin, and the Court thereby concludes that the rates requested are reasonable. *See Islamic Ctr. of Miss.*, 876 F.2d at 469.

With respect to the lodestar, defendants' argument is that the attorney's fees must "be reduced to the extent they are excessive and duplicative."[40] Defendants argue that "[t]here was no reason to have multiple attorneys participating in depositions, discovery, and other steps in litigation" and that "Gassery did not participate meaningfully in trial or in the litigation in general."[41] However, defendants do not point to any specific hours that should be reduced for being

---

[35] R. Doc. No. 250-2, at 1 (Declaration of Harrece Gassery).
[36] *See id.* ("In 2020 my hourly fee was between $215.00 and $250.00. In 2022 and 2023, my attorney fee rate was $325.00 an hour. My billing rate is now $350.00 hour.").
[37] *Id.* at 140.
[38] R. Doc. No. 250-3, at 1–2.
[39] *Id.* at 32.
[40] R. Doc. No. 254, at 3.
[41] *Id.*

10

excessive or duplicative. Defendants merely state that "[t]he examples are too many to mention."[42] "Judges are not like pigs, hunting for truffles buried in the record." *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) (quoting *Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)).

After a review of Gassery's extensive billing records, the Court cannot conclude that Gassery failed to meaningfully participate in the litigation. Furthermore, while the Court is obligated to reduce fees for work that is duplicitous, courts frequently award fees for multiple attorneys at trial or other proceedings where there is a legitimate need for more than one attorney and the additional attorneys play a supporting rather than a merely passive role.[43] Holmes's attorneys specifically state that Gassery was "listening to testimony, observing the demeanor of witnesses and the jurors, considering objections and responses to objections, assisting in the preparation of witnesses and formulation of arguments, communicating and advising [his client], and otherwise engaging in the myriad activities required to try a case from start to finish."[44] Indeed, while defendants complain of Holmes's use of two

---

[42] *Id.* at 10.
[43] *See, e.g.*, *Midkiff v. Prudential Ins. Co. of Am.*, 571 F. Supp. 3d 660, 669 (W.D. Tex. 2021) ("[H]ere [the plaintiff] has presented evidence that the additional attorney who attended the mediation and trial participated 'in a supporting role' rather than merely as a passive observer . . . . The undersigned thus also declines to reduce [the plaintiff's] proposed lodestar amount on this basis."); *Walker*, 99 F.3d at 768 (finding no clear error where the court awarded fees for multiple attorneys when the court found that there was a reasonable need for more than one attorney in the proceedings).
[44] *See* R. Doc. No. 255, at 5 n.3.

11

attorneys at trial, defendants themselves found it reasonable to have three attorneys present.[45] And defendants point to no specific examples in the billing records where Gassery or Loughlin billed for mere passive participation. The Court therefore concludes, based on a preponderance of the evidence, that Gassery's participation in these proceedings was reasonable, and the Court declines to reduce the requested lodestar on this basis.

Nonetheless, after combing through the billing records, the Court concludes that there is evidence that, in some instances, Gassery did not exercise billing judgment. For example, Gassery appears to make a six-minute entry for nearly every email received from the Court regarding filings in this case.[46] These include emails notifying parties of Holmes's own filings.[47] At the time of this order, there are 258 entries in the record.[48] The Court cannot conclude that billing six minutes for every email from the Court notifying the parties of these entries is reasonable. Furthermore, Gassery made duplicated entries for many of these emails from the Court.[49] These double counted entries are easily identified by reference to the

---

[45] *See* R. Doc. No. 215, at 1.
[46] *See, e.g.*, R. Doc. No. 250-2, at 11 ("From USDC to HG re Efile Motion for Extension of Time (#48) . . . From USDC to HG re Correction of Docket Entry by Clerk (#49) . . . From USDC to HG re Order granting Motion to Enroll (#50)").
[47] *See, e.g., id.* at 13 ("From USDC to HG re Memorandum by All Plaintiffs filed (#52) at 04:55 PM").
[48] *See generally* E.D. La. Case No. 19-12749 (docket sheet).
[49] *See, e.g.*, R. Doc. No. 250-2, at 51 ("From USDC re doc no 102"); *cf. id* at 49 (From USDC to HG KL re Efile defendants' Motion for Extension of Time (#102) at 10:45 PM"). *See also, e.g., id.* at 76–78 (showing listings for emails received from the Court regarding record documents 120 through 130); *cf. id.* at 68–70 (showing listings for emails received from the Court regarding record documents 120 through 130).

12

document number in the record with which the email is concerned. Gassery also appears to have made duplicate entries to some other work in his logs.[50] Given the prevalence of this double counting, the Court cannot be confident that many of the other extensive entries are not likewise duplicated.

Additionally, Gassery bills several hours for work on motions that appear to never have been filed.[51] The Court's review is further complicated by the fact that Gassery's records are plagued by dates that do not match the dates in the record.[52] The Court therefore cannot say that fees for these motions that appear to never have been filed is reasonable. Given the evidence of a lack of billing judgment on Gassery's part, the Court opts to reduce his requested fees by 30 percent to account for the lack

---

[50] *See* R. Doc. No. 250-2, at 14 (including an entry for four hours of "Memorandum Drafting" on September 24, 2020). The Court notes that Holmes's memorandum delineating claims had already been submitted prior to this date. *See* R. Doc. No. 52. Furthermore, Gassery's log includes several hours billed for work in memorandum drafting prior to the memorandum's submission. *See* R. Doc. No. 250-2, at 9–10, 12 (including hours billed for memorandum drafting on 9/19/2020, 9/20/2020, 9/21/2020, and 9/22/2020). Holmes did not file another memorandum in this case until December 28, 2020, when he filed a response to defendants' motion for summary judgment. R. Doc. No. 72. Yet this entry cannot be related to work on Holmes's response because defendants filed their motion on December 16, 2020. R. Doc. No. 68. And the Court did not grant defendants permission to file their motion until December 3, 2020. R. Doc. No. 67.
[51] *See, e.g.*, R. Doc. No. 250-2, at 26 (listing work done on "MIL Prep," research and drafting for motions *in limine*, and for emails sent or received pertaining to a proposed motion *in limine* between December 5, 2020 and December 8, 2020); *cf.* E.D. La. Case No. 19-12749 (docket sheet) (showing no motions *in limine* filed by Holmes before March 7, 2023).
[52] *See e.g.*, R. Doc. No. 250-2, at 62 (listing an entry on December 8, 2021 for an email "From USDC to HG KL re Efile motion to lift stay (#116) at 06:24 PM"); *cf.* R. Doc. No. 116 (showing the date that this document was filed into the record as August 23, 2022); *see also* R. Doc. No. 250-2, at 64 (showing a listing on January 1, 2022 for an email "From MH to HG KL re Proposed COA draft response"); *cf.* 5th Cir. Case No. 21-30164, R. Doc. No. 58 (judgment entered on December 14, 2021).

of billing judgment. The Court therefore reduces the lodestar for Gassery's requested fees from $91,431.70 to $64,002.19. The Court finds no evidence that Loughlin failed to exercise billing judgment with respect to his requested $210,402.50. Accordingly, the Court calculates the lodestar for this case to be $274,404.69.

The Court now looks to the *Johnson* factors and whether the award should be further adjusted. Defendants' argument here is that Holmes's "fees should be reduced to reflect the lack of damages recovered at trial and the dismissal of certain claims before trial."[53]

Holmes initially brought this lawsuit against six defendants,[54] asserting at least nine federal claims.[55] However, he voluntarily dismissed his claims against three of the defendants entirely.[56] Just two of the defendants and five federal claims went to the jury.[57] After trial, the jury concluded that Reddoch was liable for unreasonably arresting Holmes in violation of the Fourth Amendment.[58] The jury also found Reddoch liable for three of Holmes's five state-law claims: battery, false arrest or imprisonment, and malicious prosecution.[59] But the jury concluded that Reddoch was not liable for Holmes's First Amendment claim, his Fourth Amendment excessive force claim, or his Fourth Amendment claim that he was unreasonably

---

[53] R. Doc. No. 254, at 3.
[54] R. Doc. No. 1, ¶¶ 5–10.
[55] *See* R. Doc. No. 52 (memorandum delineating claims).
[56] R. Doc. No. 164.
[57] *See* R. Doc. No. 219.
[58] *Id.* at 2–3.
[59] *Id.* at 5–6.

14

stopped.[60] Holmes was unsuccessful on all of his claims brought against Ryan Hebert.[61]

While Holmes was not successful on all of his federal claims or against all defendants, he prevailed on a substantial federal issue when the jury concluded that he was unreasonably arrested pursuant to the Fourth Amendment. And the Court was unable to identify any specific hours billed that related only to Holmes's unsuccessful claims. Holmes likewise succeeded on several state-law pendant claims and may receive attorney's fees for efforts related to those claims because they arose out of a "common nucleus of operative facts." *See Planned Parenthood of Houston and S.E. Texas*, 480 F.3d at 739. Because a common core of facts related to all of Holmes's claims, Holmes may likewise recover all reasonable attorney fees for his successful claims despite his lack of success against all defendants. *See La. Power & Light Co.*, 50 F.3d at 327. The Court therefore declines to deduct any specific hours from the requested attorney's fee on this basis.

However, in light of the *Johnson* factors, the Court concludes that the lodestar is not proportional to the degree of success obtained in the lawsuit and must be reduced. At trial, Holmes was awarded $57,700 for only one federal theory of recovery along with his successful state-law claims, and he was awarded $65,000 in punitive damages.[62] Holmes's recovery and success were certainly significant, and the high fees in proportion to the jury award are at least partially justified by the two appeals

---

[60] *Id.* at 2–4.
[61] *Id.* at 7–8.
[62] R. Doc. No. 230.

15

filed in this case, both of which were won by Holmes. However, given the initial scope of the lawsuit and Holmes's relatively limited recovery, it would be fundamentally unfair to award the full fee as requested.

After carefully considering the record in this case and the partial success that Holmes obtained, the Court determines that a reduction of 15 percent to the lodestar constitutes a reasonable attorney's fee. Having considered the other *Johnson* factors, the Court concludes that the other factors are either subsumed within the Court's lodestar calculation or do not warrant an adjustment of the lodestar. The Court will therefore further reduce Gassery's fee from $64,002.19 to $54,401.86, and the Court will reduce Loughlin's fee from $210,402.50 to $178,842.13. The Court will award a total of $233,243.99 in attorney's fees.

Defendants make no argument why Holmes's requested expenses should either not be paid or should be reduced. The Court therefore awards Holmes the requested $2,512.40 for litigation-related expenses.

## IV.  CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Holmes's motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants Turlich and Reddoch are liable to Holmes for $235,756.39 in reasonable attorney's fees and expenses.

New Orleans, Louisiana, December 4, 2024.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**